# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **JERRY TREADWAY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00571 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DOCTOR MULLINS, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Jerry Treadway, Pro Se Plaintiff; Lynne Jones Blain and M. Scott Fisher, Jr.,* HARMAN, CLAYTOR, CORRIGAN & WELLMAN, *Richmond, Virginia, for Defendants Benny Mullins, M.D., Tina Townsend, and Doris Doyle; Ann-Marie White and Laura Maughan, Assistant Attorneys General,* OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, *Richmond, Virginia, for Defendants F. Santos, Barry Marano, Joe Stallard, C. Long, B. J. Ravizee, K. Crowder, and D. Harris.*

The plaintiff, Jerry Treadway, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). The matter is before me on the defendants' motions to dismiss to which Treadway has responded. Finding the motions ripe for consideration, and having reviewed the record, I conclude that the defendants' motions must be granted in part and denied in part. I have also considered Treadway's motions seeking interlocutory injunctive relief and I find that they must be denied.

## I. Background.

Treadway is an inmate in the custody of the Virginia Department of Corrections ("VDOC"), and when his claims arose, he had been incarcerated at Wallens Ridge State Prison ("Wallens Ridge") for some time. In April 2021, Treadway notified the court of his transfer to River North Correctional Center ("River North"), where he is presently confined.

Treadway's submissions indicate that this inmate has had multiple evaluations by an audiologist at Virginia Commonwealth University ("VCU"). After a consultation in January 2019, the audiologist noted that Treadway has "bilateral severe to profound" hearing loss, that he needs to have his left hearing aid "at all times to communicate and for safety," and that he cannot wear a hearing aid on his right ear. Compl. Aff. & Exs. 12, ECF No. 1-2.[1] The audiologist also noted, "Based on patient's vertigo (dizziness), he needs to remain on the bottom bunk and ground floor. This is very important for his safety." *Id.* He continued, "Since patient will need to return for hearing aid related appointments and updated hearing tests it is recommended for patient to stay at Sussex I [State Prison]. This facility is closer and is better equip[p]ed to handle the hearing impaired." *Id.*

---

[1] For the sake of consistency, all page cites to the record in this Opinion refer to the page numbers assigned to the documents by the court's electronic filing system.

After another consultation in October 2019, the audiologist reported that Treadway was doing well, had been given "tubing (13 thick) for him to replace himself" on his hearing aid, and that Treadway stated that he ha[d] plenty of 13 batteries." *Id.* at 15.  The audiologist further explained:

> Patient is deaf in his [right ear] and hard of hearing [in his left ear]. Hard of hearing means that [Treadway] cannot hear normal conversation without a hearing aid.  Even with a hearing aid [he] will still have difficulty because he has no hearing in his [right ear] and cannot wear a hearing aid in [that ear].  Background noise will affect his hearing ability even with a hearing aid.  [Treadway] DOES NOT KNOW SIGN LANGUAGE OR LIP READ.  Patient needs his [hearing aid] at all times to communicate and hear.

*Id.*  Notes at the bottom of the consultation form indicate that Treadway "has balance issues and will continue to need the bottom bunk!  Please follow up with Barry Marano in order for [Treadway] to stay at Sussex I."   *Id.*   An Institutional Classification Authority Hearing ("ICA") report indicates: "Discussion with Barry Marano in regards to offender's hearing impaired limitation and medical transfer revealed that . . . Treadway is hearing impaired and not deaf and cannot benefit from an interpreter due to him not knowing/understa[nd]ing sign language." *Id.* at 19.

For reasons not in the record, Treadway was transferred at some point thereafter to Wallens Ridge, where he was frustrated by the lack of consistency in the accommodations provided for his hearing difficulties, as reflected in his current claims.  The defendants in the present action are Benny Mullins, M.D.; Nurse Tina Townsend; and Nurse Doris Doyle ("Medical Defendants") at Wallens Ridge, as

well as F. Santos, ADA coordinator at Wallens Ridge; Barry Marano, VDOC ADA Coordinator; C. Long, a Wallens Ridge Counselor; Joe Stallard, a Wallens Ridge Unit Manager; B. J. Ravizee,[2] Wallens Ridge Grievance Coordinator; K. Crowder, VDOC Regional Grievance Coordinator; and D. Harris, Wallens Ridge Institutional Investigator ("Non-Medical Defendants").  Treadway sues all of these defendants in their individual and official capacities.  As authority for his claims, he cites various federal constitutional provisions, the ADA, the Virginia Constitution and statutes, and VDOC Operating procedures.

In Treadway's initial Complaint, ECF No. 1, he raises Claims One through Twelve.  The First Amended Complaint, ECF No. 25, raises what I have numbered as Claims Thirteen through Sixteen, in addition to adding monetary damages to the injunctive relief requested.  The Second Amended Complaint, ECF No. 37, raises two additional contentions that I have numbered as Claims Seventeen and Eighteen. These pleadings, liberally construed, incorporate by reference exhibits attached to the pleadings, which include copies of medical records, classification proceedings, and administrative remedy forms and appeals that Treadway filed about the incidents

---

[2] In the Complaint, Treadway refers to this defendant as B. J. Rauize.  Because later submissions clearly indicate that the defendant's last name is Ravizee, the Clerk has corrected the docket to reflect this spelling, and I have used it throughout this Opinion.

or issues of which he complains.[3]  To gather any informed understanding of his claims, one must read the pleadings and the attachments, a procedure reflected in the summary of claims and facts in this Opinion.[4]

**Claim One**: On February 26, 2020, Long "alleged he did an Annual Review," but he did not comply with VDOC rules for this "I.C.A. process," in violation of the Due Process Clause.  Compl. 4, ECF No. 1.  Long and Ravizee responded to Treadway's Informal Complaint and Regular Grievance that he wrote about this issue without resolving the problem and policy violations he identified.

---

[3] Given the importance of Treadway's grievance documents to several of his claims, I will take judicial notice of the VDOC grievance procedure, which is available online, Operating Procedure 866.1.  Generally, this procedure requires inmates to attempt to address grievances informally, through talking to officials or writing Inmate Request forms asking for assistance.  The first stage of the grievance procedure is to file an Informal Complaint form, which will be forwarded to an appropriate official for response.  Then, if still dissatisfied, the inmate can file a Regular Grievance within thirty days from the date of the issue or incident.  The facility's Grievance Coordinator screens each Regular Grievance at intake and may return it to the inmate if it fails to meet certain criteria, such as timeliness, providing sufficient information, or addressing only one issue.  The inmate may correct the noted problem and refile the Regular Grievance, or he may appeal the intake decision to the Regional Ombudsman.  If a Regular Grievance is accepted at intake, officers investigate, and the Warden or his designee provides a Level I response to the grievance.  If the inmate disagrees with the Level I response, he may appeal that disposition for a Level II response from a regional VDOC official.

[4] Treadway is advised that this style of presenting one's Complaint does not comply with the Federal Rules of Civil Procedure, which require the plaintiff to state, *in the Complaint*, the facts in support of the claims that he is raising.  Fed. R. Civ. P. 8, 10.  The defendants and the court should not be put to the task of sifting through a stack of attached documents to determine the factual matter that the plaintiff is offering to support his federal claims for relief.

**Claim Two**: On April 28, 2020, "prison guards" entered Treadway's cell at 5:30 a.m. and "repeatedly kicked his bed in an attempt to cause a physical confrontation, and told him he was on cell restriction for not being able to hear them call count." *Id.* at 5. Treadway asserts that this incident violated his Eighth Amendment rights and occurred in retaliation for his requests that Stallard and Long follow VDOC policies regarding "I.C.A. procedures," which apparently refers to various classification proceedings. *Id.* Stallard responded to Treadway's Informal Complaint form, stating that Treadway was not placed on cell restriction. Treadway complains that no one conducted a proper investigation of the bed-kicking incident.

**Claim Three**: On May 6, 2020, Treadway filed an Informal Complaint, stating that his hearing aid was defective, and he wished to see the doctor. Townsend responded on May 8, 2020, that Treadway had "refuse[d] sick call by failing to communicate with the nurse." *Id.* at 6. Treadway then filed a Regular Grievance, complaining that he could not communicate with any of the medical staff because of his hearing impairment and needed an interpreter. In response, Ravizee provided "incorrect information that [Treadway] refused sick call twice when he was unable to communicate due to his Hearing impairment." *Id*. Ravizee refused to process the grievance, and Crowder refused to respond to the appeal.

**Claim Four**: On April 20, 2020, Treadway "sent a request for job assignment to defendant J. Stallard based on [VDOC] facilities housing offenders with

disabilities." *Id.* at 7.  Stallard responded a week later, stating that "jobs are given to those who are referred by line staff and yes, they are competitive," Compl. Aff. & Exs. 47, ECF No. 1-2.  Treadway filed an Informal Complaint on the issue, and Santos responded that no pod or houseman jobs were available, but when an opening arose, Treadway would "be considered." *Id.* at 48.  Treadway complains that Stallard and Santos "address[ed] none of the concerns according to [VDOC] policy." Compl. 7, ECF No. 1.  Treadway filed a Regular Grievance, which Ravizee "refused to process the grievance citing insufficient information" about posted jobs, *id.*, and on appeal, Crowder upheld Ravizee's decision, advising Treadway to follow guidelines for submitting job applications.  Compl. Aff. & Exs. 50, ECF No. 1-2.

**Claim Five**: On April 26, 2020, Treadway requested access to a TTY/ TTD phone system for offenders with disabilities to communicate with family.  On May 12, 2020, he filed an Informal Complaint regarding access to a phone for an offender with disabilities and Stallard refusing to respond.  Compl. 8, ECF No. 1.  Santos responded that he was working with the statewide ADA representative about the phone request.  Ravizee refused to process a Regular Grievance on this exchange, and Crowder upheld that intake decision on appeal.  *Id.*

**Claim Six**: In June 2020, Treadway filed request forms asking to see a doctor about being assigned a bottom bunk and a bottom tier cell because of his inner ear balance problems.  Stallard responded, advising Treadway to consult with the

institutional physician about these requests.  Compl. Aff. & Exs. 58, ECF No. 1-2.
On June 19, 2020, he filed an Informal Complaint asking why he had not seen the
doctor yet for the "problems with [his] ears."  *Id.* at 60.  Townsend responded on
June 23, 2020, that Treadway had seen the doctor and that Townsend was in the
process of having his hearing aid supplies provided to him.  Treadway filed a Regular
Grievance on July 2, 2020, complaining that he was still assigned to a top tier cell.
Ravizee responded, stating that Treadway "did not state bottom bunk, bottom tier
status," told him to request medical services, and refused to process the grievance.
Compl. 9, ECF No. 1.  Crowder upheld this intake decision.

**Claim Seven**: On July 16, 2020, Treadway filed an Emergency Grievance,
complaining to the medical staff that he had reported receiving corroded hearing aid
batteries, and that a nurse had promised to bring him replacements, but had failed to
do so for five days.  Treadway alleges that he was unable to hear or communicate
with anyone during that time.  Doyle responded that the situation Treadway
described did not meet the definition of an emergency and that batteries would be
provided at pill call.  Compl. Aff. & Exs. 64, ECF No. 1-2.  Treadway complains
that being without hearing aid batteries puts him at risk of not hearing important
commands during a violent incident involving other inmates and staff, forcing him
to self-segregate for his own safety when he does not receive batteries.

**Claim Eight**: On July 20, 2020, Treadway filed an Informal Complaint form about Doyle's "refusal" to issue him a pack of hearing aid batteries as ordered by the audiologist.  Compl. 11, ECF No. 1.  A week later, Townsend responded that Treadway had received a pack of eight batteries on July 22, 2020, that he should keep all old batteries to exchange for new ones, and that he should notify medical when he used his last battery.  Compl. Aff. & Ex. 65, ECF No. 1-2.

**Claim Nine**: On July 22, 2020, Treadway filed an Emergency Grievance, complaining that a nurse had retrieved dead batteries from him, but never returned with any new ones, leaving Treadway unable to hear.  He contends that this timing violated a VDOC rule that staff must respond to an Emergency Grievance within eight hours, which in turn, he asserts as a Due Process violation.  Compl. 12, ECF No. 1.

**Claim Ten**: Treadway filed Regular Grievances on July 13, and 15, 2020, "setting out in detail medical staff refusal to follow [VDOC] operating procedures for offenders with disabilities that require hearing aid batteries." *Id.* at 13.  Ravizee rejected both filings, and Crowder "refused to provide ombudsman action on [VDOC] policy for disabled offenders." *Id*.

**Claim Eleven**: On July 14, 2020, when Treadway had a scheduled sick call visit with a nurse, he told her that he could not hear because he needed a battery for his hearing aid and asked to reschedule the sick call when he had a battery.  Compl.

Ex. 73–74, ECF No. 1-2.  He filed an Informal Complaint on July 23, 2020, about the incident and asked why the medical staff refused to provide an interpreter for him, in violation of VDOC policy, and instead, recorded that he had refused sick call.  On August 3, 2020, Townsend responded that Treadway had not requested an interpreter when being seen by nurses on July 14, 16, 17, and 22, 2020.  In his Regular Grievance, Treadway explained that until his batteries were delivered July 22, 2020, he could not communicate with the nurses.  He demanded that the medical staff regularly provide the batteries he needs, stating that "failure to provide batteries is not an excuse to not provide an interpreter."  *Id.* at 74.  Ravizee rejected the filing as a Request for Services, and Crowder upheld that finding.

**Claim Twelve**: On August 19, 2020, Treadway filed a grievance seeking access to "a designated facility ADA coordinator."  Compl. 15, ECF No. 1.  He asked why Santos was not responding to his request forms asking for help with his disabilities.  Treadway also stated that his appeal to the Regional Ombudsman was currently pending.  Compl. Aff. & Exs. 77, ECF No. 1-2; First Am. Compl. Attachs. 1–5, ECF No. 25-1.

**Claim Thirteen**: On September 8, 2020, Santos responded to Treadway's Informal Complaint, stating that he would meet with Treadway on September 11, 2020, about his disability needs, but this meeting never occurred.  Ravizee failed to provide Treadway with a timely response to his Regular Grievance on this issue, and

Crowder "refused to provide any supervisory action" based on this grievance policy violation. First Am. Compl. 2, ECF No. 25; Attachs. 1–5, ECF No. 25-1. Based on these events, Treadway complains that he has no access to an ADA coordinator who will assist him with his disability issues.

**Claim Fourteen.** On April 23, 2020, Treadway filed an Offender Request, complaining that his hearing aid was "cutting on and off by itself." First Am. Compl. Attachs. 6, ECF No 25-1. He also stated: "I need to be placed in bottom bunk on ground floor. I'm having dizziness and buzzing in ear" in my top tier cell that "is causing me lack of sleep and stress." *Id.* A nurse responded that he would be placed on sick call. At sick call three days later, "the defendants" allegedly failed to take any action to ensure that Treadway could have a functioning hearing aid and failed to respond to his grievances and appeals according to policy.

**Claim Fifteen**: The defendants have displayed a pattern of discrimination by failing to assign Treadway to prison jobs that were "clearly available for a disabled offender" who meets the job qualifications, in violation of VDOC policy. First Am. Compl. 5, ECF 25. This claim incorporates Claim Four from the Complaint and grievance documents about an incident in September 2020. First Am. Compl. Attachs. 11–15, ECF No. 25-1. Treadway stated in his Informal Complaint:

> On 9-20-20 I notice an inmate who was recently hired for a houseman job that had a charge for fighting in February 2020. On 5-4-20 ADA F. Santos [told me] that "soon as a job open, you will be considered." So, how is it that inmate with a charge 7 months ago got

> hired ahead of me with no charges for over 39 months?  Since 5-4-20,
> four inmates were hired[.]  Why am I being discriminated [against]?

*Id.* at 11.  Stallard responded, "Institutional Employment is and always will be competitive in nature.  Please get a floor officer to recommend you for a position."

*Id.*  Treadway complained in his Regular Grievance on the matter that an inmate with a recent disciplinary charge would not be eligible for any job, and that counselors, not floor officers, determine job eligibility and assignments, according to VDOC policy.  The Level I response stated that "[o]ffenders with disabilities will be reviewed and approved for job assignments in accordance with" policy.  *Id.* at 14. The response continued, in part:

> Investigation into your complaint determined that offenders are
> encouraged to complete applications for work assignments, however
> not every offender can be employed at the same time, as there are a
> limited number of offender work positions and there are other offenders
> who also meet specific criteria for those positions.  Mr. Stallard
> reported that floor officers recommend offenders for jobs in the housing
> unit.  You are encouraged to continue to apply for positions as they
> become available.

*Id*.  Treadway contends that inmates who were not eligible for jobs were, nevertheless, hired ahead of him, which he blames on discrimination because of his hearing disability and the defendants' violation of VDOC policies.  First Am. Compl. 6–7, ECF No. 25.

**Claim Sixteen**:  On December 15, 2020, after repeated requests for batteries for his hearing aid, Treadway filed an Emergency Grievance about needing batteries

so he could hear.  *Id.*  No proper medical response was filed, but a nurse and an officer told Treadway he would receive his batteries if he turned over the Emergency Grievance receipt, which he did.  Treadway complains that the medical staff has continued to fail to maintain a stock of hearing aid batteries.

**Claim Seventeen**: On October 5, 2020, Treadway was denied pod recreation for failing to comply with dress code, because he did not have his shirt tucked in before leaving his cell.  Second Am. Compl. 1–2, ECF No. 37; Attachs. 1–5, ECF No. 37-1.  Treadway filed an Informal Complaint about the incident, complaining that he was denied recreation because he could not hear, referring to a five-minute verbal warning that the control booth officers give before recreation time.  Stallard responded that all inmates must comply with recreation standards.  Ravizee refused to process Treadway's first Regular Grievance because he did not name the officers involved, although he has no access to booth officers' names.  Nevertheless, Treadway did ultimately receive Level I and Level II responses related to this grievance.  He faults defendants for ignoring VDOC policies about how Shared Allied Management (SAM) unit means an environment used to promote safety within institutions by avoiding the use of restrictive housing to manage vulnerable populations that typically require a High level of service from security, mental health, and medical staff.  Second Am. Compl. 2–3, ECF No. 37.

**Claim Eighteen**: In November 2020, Treadway complained to the medical staff that he needed a tube for his hearing aid; Townsend responded that she had "contacted VCU and they are sending the correct tube." *Id.* at 3; Attachs. 6–9, ECF No. 37-1. After thirty days, Treadway filed an Informal Complaint about the delay in receiving the tube that he needed to hear through his device. Townsend responded: "They were contacted. You will receive them when they are rec[ei]ved in medical." Second Am. Compl. Attachs. 6, ECF No. 37-1. When Treadway followed up with a Regular Grievance, Ravizee refused to process it, stating that it was a request for services that the medical staff could not provide until the tubing was delivered. Crowder upheld this intake decision on appeal. Treadway states that for more than 115 days, he went "without the correct hearing aid device that compliments the correct plastic tubing for appropriate physical mold fit" and faults the defendants for failing to maintain "durable disability medical equipment" available for him as a disabled inmate. Second Am. Compl. 3, ECF No 37.

## II. DISCUSSION.

A district court should dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if, accepting all well-pleaded allegations in the Complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).   Taking Treadway's pro se status fully into account, I understand his goal in this case to be two-fold:  to seek redress for particular incidents and actions that he claims have violated his constitutional rights and to use those events to illustrate his overarching contention that VDOC officials, while he was confined at Wallens Ridge during 2020, denied him benefits and services for which he was eligible because of his hearing disability, in violation of the ADA.[5]  I will separately address these two kinds of claims.

## A.  Initial Matters.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

---

[5]  Treadway also vaguely asserts unspecified legal claims against the defendants under the Virginia Constitution and a Virginia statute that protects individuals with disabilities.  I cannot serve as his advocate to construct his factual matter into legal claims under this state legal authority and, in any event, I find little likelihood that any such claim would benefit him in ways that his federal constitutional and statutory claims would not.

First, I will dismiss all § 1983 claims for monetary damages against the defendants in their official capacities.  Neither a State, nor state officials acting in their official capacities constitute "persons" within the meaning of the statue when sued for monetary relief.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, I must dismiss Treadway's claims against defendants B. J. Ravizee, the Wallens Ridge Grievance Coordinator,  and K. Crowder, the VDOC Regional Grievance Coordinator.  Many of Treadway's § 1983 claims center on alleged wrongdoing or omissions by these and other defendants based on their responses to grievance documents or their handling of grievance proceedings.  These claims must be dismissed because they fail to show how these defendants personally deprived Treadway of any constitutionally protected right.

"[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure.  An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).   Treadway's claims assert that, as grievance coordinator and ombudsman, Ravizee and Crowder should not only precisely follow every grievance procedure and timeline, they should also, in response to grievances or grievance appeals, recognize any policy violation the inmate describes and take steps necessary to discipline offending officials, to correct the alleged procedural defects, or to alleviate the effects of the alleged violation.   Treadway misunderstands the

relationship between a prison grievance procedure and his personal constitutional rights.  Because inmates have no constitutional right to a prison grievance procedure, they also have no right to utilize an existing procedure to enforce their rights under the Constitution or any other federal or state regulation.

Treadway also faults Ravizee and Crowder, and other defendants, for responses to grievance documents that do not recognize or take steps to correct problems that Treadway has perceived and presented in those documents as other officials' violations of Virginia laws and VDOC regulations.  In several such claims, he refers to these alleged omissions of duty as due process violations for which he seeks to hold the defendants liable under § 1983.  However, "it is well settled that violations of state law cannot provide the basis for a due process claim" under the Constitution.  *Weller v. Dep't of Soc. Sers.*, 901 F.2d 387, 392 (4th Cir. 1990).  Therefore, the defendants' alleged violations of VDOC procedures, whether related to the grievance process or accommodation of disabled inmates' needs or other issues of concern to Treadway, do not state a factual basis for any constitutional claim cognizable under § 1983.  *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) ("[P]rison officials' failure to follow internal prison policies [is] not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation.").

Accordingly, Treadway's pleadings fail to state facts showing that Ravizee and Crowder took, or failed to take, any action that deprived him of a constitutionally protected right. Therefore, I will grant the Motion to Dismiss as to all § 1983 claims against Ravizee and Crowder.

B.  The § 1983 Claims.

*Claim One: The Annual Review.*

In this claim, Treadway complains that defendant Long omitted a step required by VDOC procedures for his Annual Review and asserts that the omission violated his due process rights. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. Where a claimant asserts procedural due process claims, as Treadway does in Claim One, the court must first consider whether the inmate has asserted a protected interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies. . . ." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). An inmate's federally protected liberty interests

Case 7:20-cv-00571-JPJ-PMS   Document 85   Filed 09/20/21   Page 19 of 42   Pageid#: 513

created by state law are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).[6]

If the status change that an inmate challenges does not impose "atypical and significant hardship" on him or "inevitably affect the duration of his sentence," then he has no federally protected liberty interest, and he is not entitled to federal due process protections before prison officials may implement that change. *Id.* at 487. Mere limitations on privileges, property, and activities, that have no effect on an inmate's term of confinement, "in response to a wide range of misconduct fall[ ] within the expected perimeters of the sentence imposed by a court of law," and as such, cannot qualify as harsh or atypical so as to create a protected liberty interest. *Id.* at 485.

Treadway's challenges in Claim One to his Annual Review by defendant Long, and to other classification procedures mentioned in his pleadings, fail to

---

[6] Treadway states no facts on which I can find any violation of his substantive due process rights related to the claims in this action. *See, e.g., Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) ("[C]onduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.") (internal quotation marks and citations omitted).

-19-

invoke a protected liberty interest under this standard. First, as stated earlier, officials' failure to comply with Virginia law and VDOC classification procedures does not offend Treadway's rights under the Constitution. *Weller*, 901 F.2d at 392. Second, Treadway has not identified any repercussions from the challenged classification proceedings that subjected him to significant hardship conditions atypical of the expected parameters of his prison term. Accordingly, Treadway fails to show that any classification proceeding, as described in the Complaint as amended, triggered federal procedural protections under *Sandin*. Therefore, I conclude that the Motion to Dismiss must be granted as to all § 1983 claims alleged in Claim One.

### *Claim Two: Harassment during Count.*

Here, Treadway alleges that "as a result" of his request that Long and Stallard follow VDOC classification procedures, other officers kicked his bed and placed him on cell restriction after he did not hear or respond to the early morning announcement for count. *See* Compl. 4–5, ECF No. 1. In response to an Informal Complaint, Stallard reported that no cell restriction had been imposed, but failed to investigate the incident further.

This claim implicates no constitutional rights. First, Stallard's mere written response to an administrative remedy form and alleged failure to follow investigative

procedures for such forms cannot provide grounds for any constitutional claim. *Booker*, 855 F.3d at 541 (no constitutional right to grievance procedure).

Second, while Treadway appears to be alleging that officers kicked his bed in retaliation for his requests to Long and Stallard, he states no facts to support such a claim. To succeed on a retaliation claim under § 1983, Treadway must establish that "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (internal quotation marks and citation omitted). Only if the prisoner shows that his "protected conduct was a substantial or motivating factor" in the defendant's decision to take adverse action, does the burden then shift to the defendant to prove a permissible basis for taking that action. *Id.* at 300.

Treadway's retaliation claim fails on the third prong of the *Martin* analysis. He fails to state any facts on which he could show that his complaints to Long and Stallard about classification proceedings were a motivating factor that caused officers to kick his bed for failing to stand for count. Indeed, Treadway does not show that the officers who woke him for count even knew about his complaints to Long and Stallard. Treadway cannot state a § 1983 retaliation claim based on mere speculation or conclusory assertions. *See Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir.

1994) (finding § 1983 retaliation claim was properly dismissed where plaintiff provided only conclusory assertion of retaliation with no facts to show defendant's actions were motivated by plaintiff's exercise of constitutional right).  Accordingly, I will grant the Motion to Dismiss as to Treadway's retaliation contention in Claim Two.

Treadway also claims that this incident violated his Eighth Amendment right to be free from cruel and unusual punishment.  In such a claim based on past incidents of harsh prison conditions, a failure to demonstrate resulting harm is fatal to proceeding against the defendant under § 1983.  *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (holding that in "challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions").  Treadway does not allege any harm he suffered from the incident at issue in Claim Two.

Furthermore, Treadway states no actionable § 1983 claim based on the alleged statement that he was on cell restriction.  Treadway's own exhibits indicate that he was not actually placed on cell restriction because he failed to comply with a count procedure announcement that he could not hear.  Compl. Aff. & Exs. 38, ECF No. 1-2.  An officer's alleged threat of cell restriction or similar verbal harassment does not support any § 1983 claim.  *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th

Cir. 2005) (unpublished) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

Based on the foregoing, I will grant the Motion to Dismiss as to all § 1983 claims asserted in Claim Two.

*Claim Three: Interpreter Services for Medical Visits.*

This claim centers on an incident in May 2020 when Treadway's hearing aid needed repairs, but he was unable to communicate with nurses during sick call about the problem. Townsend stated that Treadway's conduct constituted refusing sick call, but Treadway asserts that medical staff should have provided an interpreter to assist him in discussing his problem with the nurses. A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To act with deliberate indifference, an official must have been personally aware of facts indicating a substantial risk of serious harm, and also must have actually recognized the existence of such risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Liberally construed, Treadway's claim is that in response to his Informal Complaint, Nurse Tina Townsend allegedly failed to ensure that he was promptly scheduled to see a doctor about his hearing aid problem, despite knowing of his inability to communicate to nurses at sick call without help, such as an interpreter. Defendant Townsend has filed only an Answer in response to this claim. This claim will go forward to summary judgment or trial.

*Claim Four: Employment Discrimination.*

Treadway's § 1983 claim here arises, if at all, under the Equal Protection Clause, "which prohibits States from denying persons 'the equal protection of the laws,' U.S. Const. amend. XIV, § 1, [and] 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  To state such a claim, Treadway "must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* (internal quotation marks and citation omitted).  Finally, he must state facts showing that "the disparate treatment [was not] reasonably related to any legitimate penological interests." *Id.* (citation omitted).

Liberally construed, Treadway's Claim Four alleges that although he meets criteria for prison job openings, he has not been offered any jobs.  He asserts that this fact proves discrimination based on his hearing disability.  He is mistaken. Treadway simply does not state facts showing that any defendant has denied him any prison job based on his hearing difficulties.  In other words, this equal protection claim fails because Treadway does not show that the defendants treated him differently than any other inmate applicants in consideration for job assignments because of his hearing problems, rather than because of a shortage of jobs,

-24-

competition from other inmates seeking employment, and Treadway's lack of a reference from a floor officer, which other applicants had earned.  I will grant the Motion to Dismiss as to Claim Four's employment discrimination claim under § 1983.

*Claim Five: No TTY/TTD Telephones.*

The § 1983 portion of this claim also arises under the Equal Protection Clause. Treadway asserts that hearing and hearing-impaired inmates are treated differently at Wallens Ridge, since hearing inmates can communicate effectively with their family members via telephone, but Treadway and other hearing-impaired inmates cannot.  He sues F. Santos, ADA Coordinator at Wallens Ridge, and Joe Stallard, a Wallens Ridge Unit Manager, for this problem.  His allegations reflect do not reflect, however, that these defendants treated him differently, through "intentional or purposeful discrimination," from other inmates, as required for an equal protection claim. *Fauconier*, 966 F.3d at 277 (internal quotation marks and citation omitted). In fact, neither of these defendants denied Treadway this requested accommodation, and his submissions indicate that Santos was working with others to implement the TTY/TTD telephone for use at Wallens Ridge.  Because Treadway fails to state facts showing that any action or inaction by these defendants caused him to be treated differently than other VDOC inmates with regard to the family communication methods, I cannot find that he has stated any equal protection claim against them.

Therefore, I will grant the Motion to Dismiss as to Treadway's Claim Five under § 1983.[7]

*Claim Six: Bunk and Tier Status.*

This claim appears to be based on a simple communication failure. Compl. Aff. & Exs. 57–62, ECF No. 1-2. After Treadway filed request forms about being assigned to a bottom bunk in a bottom tier cell because of his ear problems, Stallard told him to talk to the doctor, and a nurse referred him for sick call. When he filed an Informal Complaint complaining about delay in setting an appointment with the doctor, however, Treadway did not mention his medical needs for bottom bunk and tier status. As a result, first Townsend and then Ravizee and Crowder did not understand what medical issue Treadway was raising and addressed a different issue instead in their grievance responses. I cannot find that any defendant was deliberately indifferent in this situation where she did not know, because Treadway did not clearly inform her, of his need to see a doctor about getting bottom bunk, bottom tier status. *Farmer*, 511 U.S. at 842 (rejecting argument that "prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable

---

[7] Treadway also asserts this claim under the Eighth Amendment. Because he also fails to show that this particular communication problem caused him any serious or significant injury, *Strickler*, 989 F.2d at 1381, I will also grant the Motion to Dismiss as to any Eighth Amendment claim here.

prison official would have noticed it"). I will summarily dismiss this claim pursuant to 28 U.S.C. § 1915A(b)(1).

*Claim Seven: Delay of Hearing Aid Batteries.*

In this § 1983 claim, Treadway sues D. Doyle, the nurse who set him up to receive the hearing aid batteries he needed in July 2020. When he filed his Emergency Grievance, complaining that he had been without hearing aid batteries for five days, Doyle responded that Treadway would receive batteries at pill pass. These facts simply do not support a finding of deliberate indifference under *Farmer*. Moreover, Doyle's mere refusal to categorize the situation as meeting the definition of an emergency under the VDOC Emergency Grievance procedures, even if inaccurate under those procedures, was not a constitutional violation or otherwise actionable under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Furthermore, Treadway has no actionable constitutional claim against anyone for denying him hearing aid batteries for five days, even if he could determine who the responsible person was and bring suit against them. While being unable to hear announcements and orders during that time may have placed him at some risk of harm, the fact that he did not suffer any significant injury or harm as a result of the lack of batteries precludes him from any recovery of damages now under § 1983

against defendants at Wallens Ridge.[8]  *Strickler*, 989 F.2d at 1381.  I will summarily dismiss the § 1983 claims in Claim Seven, pursuant to § 1915A(b)(1).

*Claim 8: One Battery at a Time.*

This claim concerns a two-day period when defendant Doyle issued Treadway one hearing aid battery instead of a pack of batteries, as an audiologist had recommended when Treadway was confined at a different prison facility.  Two days later, Treadway received an eight-pack of batteries.  He fails to allege that he suffered any serious or significant harm during the two days when he did not have the full battery pack in his possession.  Accordingly, I will summarily dismiss his § 1983 claim here.  *Strickler*, 989 F.2d at 1381.  I also note that Treadway has no constitutional right to receive and possess eight hearing batteries at a time, if his serious medical needs can be met through other procedures.  *See Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (holding that for § 1983 claim, "the essential test is one of medical necessity and not simply that which may be considered merely desirable").

---

[8]  Moreover, Treadway has no claim for injunctive relief under § 1983 against the Wallens Ridge defendants regarding this problem.  Because he is no longer at Wallens Ridge, his claim against these employees for assistance with his medical equipment needs is moot.  *See Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) ("Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.").

*Claim Nine: Delayed Emergency Grievance Response.*

Treadway fails to name any defendant to this claim in the Complaint. Moreover, the gist of his complaint here is that no one provided a response to his Emergency Grievance within the eight-hour time limit prescribed by VDOC procedures.  This alleged state procedural shortcoming is simply not a constitutionally significant problem, *Weller*, 901 F.2d at 392, and I will summarily dismiss the claim accordingly, pursuant to § 1915A(b)(1).

*Claim Ten: Ineffective Grievance.*

In this claim, Treadway essentially asserts that, in response to his Regular Grievance and appeal, Ravizee and Crowder should ensure that other VDOC employees follow VDOC procedures by maintaining an adequate supply of hearing aid batteries for Treadway.  As discussed, Treadway simply has no constitutional right to use prison grievance procedures to achieve these stated goals. *Booker*, 855 F.3d at 541.  I will grant the Motion to Dismiss as to Claim Ten.

*Claim Eleven: Batteries and an Interpreter.*

In July 2020, Treadway had difficulty again getting batteries for his hearing aid and filed requests for sick call.  Nurses met with him, but without a battery, he could not hear or communicate with them.  He now sues Nurse Townsend for failing to provide an interpreter to assist him during those meetings.  Townsend's only alleged involvement consisted of responding to an Informal Complaint by stating

that on four dates, Treadway had not requested an interpreter when meeting with nurses. Treadway also fails to describe what type of an interpreter would help him communicate with anyone. His medical records indicate that since he does not know sign language or lip reading, a sign language interpreter would *not* benefit him. *See* Compl. Aff. & Exs. 19, ECF No. 1-2. Moreover, Treadway fails to allege that he suffered any serious or significant harm during the brief time when he did not have batteries or an interpreter in July 2020. *Strickler*, 989 F.2d at 1381. Accordingly, I will summarily dismiss his § 1983 claim for damages here, concerning past events.

*Claim Twelve: Access to an ADA Coordinator.*

Treadway admits that his grievances on this issue were still pending. Federal law requires that inmates bringing federal claims regarding prison conditions must first exhaust available administrative remedies before filing a court action. 42 U.S.C. § 1997e(a). Because Treadway failed to fulfill this obligation as to this claim before filing his lawsuit, I will summarily dismiss Claim Twelve under § 1997e(a).

*Claim Thirteen: Access to an ADA Coordinator.*

In the First Amended Complaint, Treadway reasserts a claim that under the ADA, he is entitled to access with a trained and knowledgeable facility ADA coordinator to assist him with accommodations of his disability. Treadway asserts that Santos is not responsive enough to his needs to meet this ADA requirement. I

find no separate constitutional violation alleged in Claim Thirteen and will address it only as an ADA claim.

*Claim Fourteen: Defective Hearing Aid.*

In this claim, Treadway asserts that in April 2020, his hearing device needed repairs; he requested medical services. He was seen by "the Medical Defendants"; and he received no immediate repairs or replacement for his device. First Am. Compl. 4, ECF No. 25. I will liberally construe this claim as against Dr. Mullins and Nurses Townsend and Doyle, alleging deliberate indifference to a serious medical need for an operational hearing aid device. This claim will go forward to summary judgment or trial.

*Claim Fifteen: Pattern of Employment Discrimination.*

In this claim, Treadway adds documentation to his claim that he has been denied jobs because of his disability. For the same reason that his § 1983 claim in Claim Four failed to state an actionable constitutional claim, this extended claim also fails. Treadway simply does not state facts showing that any defendant denied him a prison job because of his hearing disability. *See Fauconier*, 966 F.3d at 277 (holding that plaintiff must show "unequal treatment was the result of intentional or purposeful discrimination"). I will grant the Motion to Dismiss as to Claim Fifteen.

*Claim Sixteen: Grievance Receipt Exchanged for Batteries.*

Treadway asserts that unspecified defendants violated VDOC procedures by requiring him to exchange his Emergency Grievance receipt for the hearing aid batteries he had been requesting for days in December 2020. Such violations of state grievance rules, even if proven, do not support a § 1983 claim. *Weller*, 901 F.2d at 392. I will summarily dismiss Claim Sixteen accordingly, pursuant to § 1915A(b)(1).

*Claim Seventeen: Denial of Pod Recreation.*

In this claim, Treadway complains that on one occasion, officers denied him participation in pod recreation because he failed to comply with a verbal announcement that he could not hear, reminding him to tuck in his shirt before leaving his cell. This incident simply does not rise to the level of a constitutional violation. He does not show how he suffered harm as a result of missing one recreation session. *Strickler*, 989 F.2d at 1381. He makes no showing that anyone treated him differently than an inmate without a hearing impairment would have been treated if he left his cell out of compliance with the recreation dress code. *Fauconier*, 966 F.3d at 277. Finally, officials' alleged failure to follow VDOC regulations regarding SAM units does not support any claim that their actions deprived Treadway of constitutionally protected rights so as to be actionable under § 1983. I will grant the Motion to Dismiss as to Claim Seventeen.

*Claim Eighteen: Inconsistent Medical Supplies.*

In this claim, Treadway adds allegations to his earlier contention that VDOC officials have failed to keep him supplied with necessary medical equipment to accommodate his hearing disability — in this instance, "the correct hearing aid device that compliments the correct plastic tubing for appropriate mold fit." Second Am. Compl. 3, ECF No. 37. Treadway states that he has been without equipment for this device for more than one hundred fifteen days. While this situation is, no doubt, frustrating to Treadway, he does not allege that it has caused him, or is likely to cause him, serious or significant physical harm, as required for an Eighth Amendment claim regarding past events. *Strickler*, 989 F.2d at 1381. Nor does he allege facts showing that any one or more of the defendants is responsible for this delay. *See Iqbal*, 556 U.S. at 676. Accordingly, I will grant the Motion to Dismiss as to this claim regarding the Non-Medical Defendants, and I will summarily dismiss it as against the Medical Defendants, pursuant to § 1915A(b)(1).

C. The ADA Claims.

Treadway's ADA claims arise, if at all, under Title II of the statute, which

> provides that no qualified individual shall, "by reason of [a] disability," be denied the benefits of public "services, programs, or activities" or be subject to discrimination by a public entity. 42 U.S.C. § 12132. The term "disability" is defined by the Act to mean "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." *Id.* § 12102(1). And the Act further provides that an individual is "regarded as having" a qualifying impairment "if the

-33-

individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or *perceived physical or mental impairment* whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A) (emphasis added). Thus, to state a cause of action under Title II, an individual must plausibly allege (1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability.

*Fauconier*, 966 F.3d at 276.

An individual state official, sued in his or her official capacity and so in essence, standing in the place of the State, can be a proper defendant in an ADA claim, whether for monetary damages or injunctive relief. *Id.* at 280. Unlike § 1983, the ADA was enacted by Congress to be

specifically applicable to the States and state entities, such as state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). And while the States are generally immune from private damage actions by reason of the Eleventh Amendment, the Supreme Court in *United States v. Georgia* held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. 151, 159 (2006).

*Id.* at 280. Thus, a plaintiff who plausibly alleges a claim under Title II of the ADA that also plausibly presents the elements of a constitutional violation may proceed with the ADA claim for damages against the defendants in their official capacities, essentially as a claim against the State. *Id.*

On the other hand, the ADA does not permit civil actions for damages against persons sued in their individual capacities.  *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).  Therefore, I will summarily dismiss all ADA claims for monetary damages against all defendants in their individual capacities.

I conclude from the record that Treadway has plausibly alleged that he suffers from a disability or perceived disability cognizable under the ADA—almost total deafness without an operational hearing aid in his left ear and total deafness in his right ear.  Thus, I cannot say that he fails to meet the first prong of the ADA analysis. *Fauconier*, 966 F.3d at 276.  Under the second prong of that analysis, Treadway also is allegedly otherwise eligible for benefits offered to inmates by the VDOC — prison jobs, equipment to communicate with family and friends, security announcements to inform him of regulations and to protect him from hazardous situations, an interpreter to assist him in comprehending announcements and medical consultations, and adequate medical care and consistent physical accommodations for his serious medical conditions.  As to the third prong of the ADA analysis, Treadway alleges that at times at Wallens Ridge, he was deprived of some of these benefits because officials did not consistently provide him with medically recommended accommodations of his hearing impairment.   Where Treadway can offer evidence that deprivation of these benefits or services also violated his constitutional rights, he may pursue not only prospective, injunctive relief, but also

monetary damages under the ADA against one or more of the defendants in their official capacities.  *Id.*

Two of Treadway's ADA claims must be dismissed outright — his claims of job discrimination (Claims Four and Fifteen).  Even assuming without finding that Treadway could prove that his hearing impairment qualifies as a disability under the ADA, and that he was qualified for the jobs for which he applied, he has not alleged any facts indicating that anyone decided against him for particular job, based in any way on his hearing impairment.  This close connection between the disability and the deprivation of benefit is critical to any ADA claim.  *Id.* at 277 (finding ADA claim stated where officials expressly relied on inmate's medical status as basis for denying his job application).  In Treadway's case, the evidence simply does not suggest such a connection and offers other, nondiscriminatory reasons that Treadway was not offered job assignments for which he applied.  I will, therefore, grant the Motion to Dismiss as to Treadway's ADA claims related to his employment discrimination claims.

I cannot grant the Motion to Dismiss as to all of Treadway's ADA claims, however.  Namely, I construe his Complaint as amended and as supplemented by his response in opposition, ECF No. 47, to allege facts stating possible claims that VDOC officials knew, from Treadway's medical records or medical providers by the time of consultations in late 2019, that this inmate was severely hearing impaired.

They knew that to be safe, he needed certain accommodations: a steady supply of hearing aid batteries and other hearing aid supplies; assignment to a bottom bunk on the ground floor; and confinement in a VDOC facility equipped for the hearing impaired and close to the audiologist to allow for frequent appointments and device repairs. Nevertheless, at some point, officials moved Treadway to prison facilities and housing assignments that did not provide these accommodations of his disability. As a result, without regular hearing aid supplies and repairs, Treadway lost the benefit of comprehending verbal prison announcements for activities and warnings of dangerous events, placing him at risk for injury. He was not able to communicate to nurses about his medical need for hearing aid batteries or repairs. His hearing aid did not fit well or function properly for many days as a result. He could not communicate with his family by telephone or video conferencing. The defendants have not yet addressed these aspects of his ADA claims and may do so on summary judgment.

First, however, Treadway's transfer to River North affects the future of this case, particularly the defendants who will participate going forward. I conclude that as to the Non-Medical Defendants who worked at Wallens Ridge in 2020, Treadway's ADA claims must be dismissed as moot. *Fauconier*, 966 F. 3d at 281. I have already determined that Treadway states no actionable § 1983 claim against any of them. I also find no indication that they hold positions with authority to carry

out injunctive relief under the ADA at River North, Treadway's present place of confinement, were I to determine that any such relief is warranted. Furthermore, any ADA claim for damages or injunctive relief may go forward and be adjudicated with the remaining nonmedical defendant at the helm — Barry Marano, the VDOC ADA coordinator. Therefore, I will dismiss Treadway's ADA claims as to all Non-Medical Defendants except Marano in his official capacity.

The Medical Defendants have filed only an Answer to the Complaint as amended and a response to a motion seeking interlocutory relief. As stated earlier, I will summarily dismiss some § 1983 claims on medical matters. I also find, however, that liberally construing Treadway's submissions, he has sufficiently alleged that Dr. Mullins, Nurse Townsend, and Nurse Doyle knew from his medical records, his intake examination, and his medical requests, that he was unable to carry on a normal conversation without a working hearing aid, that he needed a reliable supply of batteries for that device, that he should have a medical order for a bottom bunk in a ground floor cell for safety reasons, and that he would need to have reliable access to an audiologist and supplies to maintain his hearing aid in working order. Therefore, the Medical Defendants may respond with dispositive motions, as warranted, to all of the medical-related claims under the ADA against them in their official capacities and any remaining claims under § 1983, for monetary or injunctive relief.

### D.  Motions for Interlocutory Injunctive Relief.

I cannot find merit to any of Treadway's motions seeking interlocutory court intervention before the claims in this action are resolved.  His "Motion for Injunction and Temporary Restraining Order," ECF No. 22, filed soon after the Complaint, asked the court to order the defendants to provide him immediately with reasonable housing for a disabled inmate and other particular accommodations:  a "T.T.D. Device that [he] would normally use to communicate with family over the phone system"; a "J-Ps device" and an "alarm device that can accommodate disabled offenders"; a remote control for the television for use by disabled inmates; "durable medical equipment" to fit his hearing aid; a "reasonable supply" of batteries for his hearing aid; and an ADA coordinator "trained to provide reasonable services to Deaf and Hard of Hearing offenders."  *Id.* at 4–5.  Treadway based these requests on the dangerousness of Wallens Ridge as a high security prison facility and proposed his transfer as an alternative remedy for the problems he highlighted at Wallens Ridge. Now, Treadway has been transferred away from Wallens Ridge and is no longer subject to the conditions there of which he complained in this motion.  Accordingly, I will deny his motion seeking such interlocutory relief as moot.  *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").  Moreover, Treadway has not alleged that he

faces the same problems with hearing impairment accommodations at River North. In any event, as already stated, Treadway's claims for injunctive relief under the ADA as stated in his Complaint as amended may continue as the litigation moves forward against defendant Marano in his official capacity.

Since Treadway's transfer to River North, he has filed two additional motions, ECF Nos. 66 and 80, seeking interlocutory relief based on alleged conduct by officials at that facility who are not defendants in this case.  "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).  Thus, to warrant interlocutory relief, the movant "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (internal quotation marks and citation omitted). Treadway fails to state any facts showing that official conduct described in these motions for interlocutory injunctive relief was caused or motivated by the official conduct alleged in the Complaint as amended.  Accordingly, these motions are not properly raised in this case and must be denied.

## III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1.    The defendants' motions to dismiss, ECF No. 41 and 58, are GRANTED IN PART AND DENIED IN PART.

2.    The following claims are DISMISSED pursuant to the motions to dismiss: (a) the § 1983 claims against the Non-Medical Defendants and (b) the ADA claims against the Non-Medical Defendants except for the ADA claim against Barry Marano in his official capacity.

3.    The following claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief could be granted: the § 1983 claims against the Medical Defendants in Claims One, Two, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen and Eighteen and all ADA claims against all defendants in their individual capacities.

4.    The plaintiff's Motions for Preliminary Injunctive Relief, ECF No. 22, 66, and 80, are DENIED.

5.    The remaining defendants are Barry Marano, Dr. Benny Mullins, Nurse Tina Townsend, and Nurse Doris Doyle.  They are DIRECTED to file any motion for summary judgment as to the remaining claims against them no later than 60 days following the entry of this Opinion and Order.

6.   The Clerk shall terminate defendants F. Santos, Joe Stallard, C. Long, B. J. Ravizee, K. Crowder, and D. Harris as parties to this action.

7.   The remaining claims in the case are the ADA claims against Barry Marano in his official capacity; the ADA claims against Dr. Benny Mullins, Nurse Tina Townsend, and Nurse Doris Doyle in their official capacities; and the § 1983 claims against Dr. Benny Mullins, Nurse Tina Townsend, and Nurse Doris Doyle in Claims Three (need for an interpreter) and Fourteen (need for functioning hearing aid in April 2020) in their individual capacities.

8.   The remaining claims are hereby REFERRED to United States Magistrate Judge Pamela Meade Sargent for mediation.

9.   The parties are DIRECTED to contact Judge Sargent to schedule this matter for mediation.   Mediation of this case shall proceed independently of all other pretrial development.  Mediation of this case shall not operate so as to modify or stay the scheduling provisions of any pretrial orders.

ENTER:   September 20, 2021

/s/  JAMES P. JONES
Senior United States District Judge